STATE EX REL. Jack A. KLIEGER, M.D., St. Joseph's Hospital and Wisconsin Patients Compensation Fund, Petitioners-Relators-Respondents,

v.

Jonathan ALBY, a minor, Jan Alby and James Alby, Appellants.†

Court of Appeals

No. 85–0511. Submitted on briefs June 12, 1985.—
Decided July 15, 1985.
(Also reported in 373 N.W.2d 57.)

For the appellants the cause was submitted on the briefs of *Warshafsky, Rotter, Tarnoff, Gesler & Reinhardt, S.C.,* with *Randall E. Reinhardt* of counsel, of Milwaukee.

For the petitioners-relators-respondents the cause was submitted on the briefs of *Peterson, Johnson & Murray, S.C.,* with *Mary K. Wolverton* of counsel, of Milwaukee.

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

MOSER, J.   Jonathan Alby (Jonathan), a minor, and his parents, Jan and James Alby (Albys), appeal from a judgment granting an absolute writ of prohibition against the Wisconsin Patients Compensation Fund panel (the panel)[1] and its chairman.  The panel accepted a restrictive medical authorization prohibiting the attorneys representing Jack A. Klieger, M.D., St. Joseph's Hospital, and the Wisconsin Patients Compensation Fund (respondents) from privately consulting with medical doctors Karlo Raab and John S.R. Deacon (Drs. Raab and Deacon), Jonathan's treating physicians.

The sole issue on this appeal is whether Wisconsin law prohibits a defendant's attorney from conducting private pretrial interviews with a plaintiff's treating physician. We hold that it does and, accordingly, we reverse.

The underlying matter before the panel is a medical malpractice claim by the Albys against Dr. Klieger and St. Joseph's Hospital concerning Jonathan's birth.  Apparently at or immediately after his birth Jonathan was transferred to the neonatal clinic of St. Joseph's Hospital and placed under the care of Drs. Raab and Deacon. After the malpractice claim had been filed with the panel and before any hearing, respondents' counsel requested a medical authorization from the Albys for Drs. Raab's and Deacon's records.  The Albys responded to the request with a limited authorization specifically permitting only inspection, copying or obtaining copies of the X-rays and records of the doctors or hospital and specifically prohibiting discussion of such records with the treating or examining physicians.[2]

---

[1] *See* ch. 655, Stats.

[2] The authorization reads as follows:

The respondents sought relief from this limitation from the panel. The panel denied relief by panel decision

*LIMITED AUTHORIZATION*

TO

INSPECT AND OBTAIN COPIES OF MEDICAL OR HOSPITAL RECORDS AND COPIES OF X-RAYS

TO:  DR. KARLO RAAB
     3070 North 51 St.
     Milwaukee, WI 53210

You are hereby authorized to permit any representative of PETERSON, JOHNSON & MURRAY, S.C. to inspect and obtain copies of any medical or hospital records, reports or x-rays which you have concerning JONATHON ALBY.

THIS AUTHORIZATION DOES NOT PERMIT SUCH REPRESENTATIVE TO DISCUSS THE RECORDS, REPORTS OR X-RAYS WITH ANY TREATING OR EXAMINING PHYSICIAN OF SUCH PATIENT OR ANY HOSPITAL PERSONNEL NAMED IN ANY HOSPITAL RECORD OF THE UNDERSIGNED.

This authorization is given upon the express understanding that the authorized person or firm shall provide Warshafsky, Rotter, Tarnoff, Gesler & Reinhardt, S.C., attorneys for said patient, with copies of all records obtained, within 10 days of receipt. It is agreed by the authorized person or firm that the use of this authorization constitutes assent to such condition.

The purpose of this authorization is to assist in the evaluation of a claim for personal injuries.

This authorization is valid for one year from date of signing by patient.

DATED 10/23/84

                           /s/ Jan F. Alby
                           Signature of Patient
                           Janis Alby, mother of
                           Jonathan Alby, a minor.

THIS IS A *LIMITED* MEDICAL AUTHORIZATION. PLEASE READ. This authorization *only* permits inspection, copying or obtaining copies of x-rays and records of the doctor or hospital

and order. The respondents then sought and received an alternative writ of prohibition against the panel and its chairman. After briefs were filed and arguments were heard, the trial court issued its memorandum decision which was reduced to a judgment absolutely prohibiting the panel and its chairman from imposing the restrictions of the limited authorization on the two neonatologists who treated Jonathan. In an amended judgment the trial court ordered the Albys to provide the respondents with a medical authorization not containing language restricting respondents' counsel's right to confer informally with the treating neonatologists outside the presence of the Albys' counsel. It is from this judgment that the Albys appeal.

The Albys argue that the trial court's judgment violates the physician's code of ethics under the Hippocratic oath; that there is no authority under Wisconsin law concerning such informal discussion; that by filing a lawsuit a plaintiff does not unqualifiedly forgo the physician-patient privilege; that other jurisdictions do not allow party opponents to breach the privilege; that the Wisconsin supreme court has refused, in an unpublished order, a request to breach the privilege; and finally, that it is against public policy to allow such informal conferences to breach the privilege.

The respondents counter these arguments by declaring that medical ethics are irrelevant to the issues involved in this case because the patient has commenced a malpractice action; that medical ethics are especially ir-

---

to which it is directed. It does *not* authorize any doctor, nurse, clinic or hospital employee to discuss patient's case or give written report to the person, firm or company (or agent thereof) named in the authorization.

WARSHAFSKY, ROTTER, TARNOFF,
GESLER & REINHARDT, S.C.
Attorneys for Patient

relevant where, as here, the treating physicians may be employed as experts as well as factual witnesses; and that informal conferences with treating physicians can save time and allow sifting out of irrelevant information, whereas formal discovery proceedings are complex, expensive and divulge incipient trial strategies. Respondents further argue that the cases cited by the Albys are distinguishable and that cases exist in other jurisdictions supporting the informal conference procedure. Lastly, respondents submit that the informal conference violates no public policy.

The sole issue before this court is an issue of law. We need not defer to a trial court's interpretation of issues of law.[3]

There was no physician-patient privilege at common law.[4] In 1973 the Wisconsin supreme court adopted the rules of evidence,[5] which included the physician-patient privilege, sec. 905.04, Stats. That privilege is owned by the patient, not the medical doctor.[6] Thus, a doctor's ethical obligation to observe medical confidences under the Hippocratic oath is not in issue where, as here, a patient seeks to prevent his doctor from disclosing privileged information.

---

[3] *Sunnyview Village, Inc. v. Department of Admin.*, 104 Wis. 2d 396, 402, 311 N.W.2d 632, 635 (1981).

[4] *See Boyle v. Northwestern Mut. Relief Ass'n*, 95 Wis. 312, 320, 70 N.W. 351, 354 (1897); 3 *Jones on Evidence* § 21.24, at 807 (S. Gard 6th ed. 1972); McCormick, *Evidence* § 98, at 243 (E. Cleary 3d ed. 1984); Weinstein & Berger, 2 *Weinstein's Evidence* ¶ 504[01], at 504–8 (1982); 8 Wigmore, *Evidence* § 2380, at 818 (J. McNaughten rev. 1961).

[5] 59 Wis. 2d R1 (1973).

[6] Sec. 905.04(2), Stats., states in pertinent part that "[a] *patient has a privilege* to refuse to disclose and to prevent any other person from disclosing confidential communications made . . . for purposes of diagnosis or treatment of the patient's physical . . . condition . . . ." (Emphasis added).

There simply is no case law to support the notion that a statutory physician-patient privilege is waived on commencement of a lawsuit so as to allow informal conferences with treating physicians, unless the privilege is lost due to unrelated exceptions.[7] The particular exception involved here is found in sec. 905.04 (4) (c), Stats., which reads as follows:

> *Condition and element of claim or defense.* There is no [physician-patient] privilege under this section as to communications *relevant to or within the scope of discovery* examination of an issue of the physical, mental or emotional condition of a patient in any proceedings in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense. [Emphasis added.]

Initially we note that where, as here, a plaintiff's medical condition is an element of a claim, waiver of the physician-patient privilege is restricted to "communications relevant to or within the scope of discovery . . . ." The methods of discovery allowed in Wisconsin are set forth in sec. 804.01 (1), Stats. Permissible methods of discovery include oral or written depositions and interrogatories. The definition of "discovery" nowhere includes informal, *ex parte* conferences.

Unlike depositions, private conferences do not fall within the allowable scope of discovery. A plaintiff, by

---

[7] Sec. 905.04, Stats., provides for several other exceptions to the physician-patient privilege, such as in proceedings for hospitalization for mental illness, sec. 905.04 (4) (a) ; in court-ordered examinations, sec. 905.04 (4) (b) ; in homicide trials, sec. 905.04 (4) (d) ; in physical examination of a possibly abused or neglected child, sec. 905.04 (4) (e) ; in chemical tests for intoxication, sec. 905.04 (4) (f) ; and in paternity proceedings, secs. 905.04 (4) (g) and 767.47 (7), Stats. *See also* sec. 102.13 (2), Stats., providing for waiver of the physician-patient privilege in worker's compensation proceedings.

filing a medical malpractice action, thus does not automatically waive the physician-patient privilege so as to permit a court to order an informal conference over plaintiff's objection.

This rule comports with common sense, for under secs. 804.01(3) and 804.12, Stats., a court may issue orders compelling or limiting discovery. Since an informal, private conference is not within the scope of discovery, a court cannot order a plaintiff to submit to one. To hold otherwise would allow a court to breach the plaintiff's physician-patient privilege, but the statute is clear that only the patient may breach or authorize another person to breach the privilege.[8] If the court orders private conferences outside the scope of discovery, the patient loses control of the privilege, a result the statutes clearly do not contemplate.

Requiring respondents to follow the discovery procedures set forth in the rules of civil procedure should prove no hardship. In preparing for trial parties can require discovery of experts and disclosure of all facts known and opinions held by such experts within the limits of the claimed injuries.[9] In particular, parties may obtain anything in a doctor's file by obtaining a court order allowing inspection of the doctor's files or all hospital medical records and reports.[10] By creating the codes of evidence and civil procedure, our supreme court has determined that these discovery tools adequately protect plaintiffs' interests while affording defendants the best opportunity to discover facts.

We note that the supreme court authored both the Wisconsin rules of evidence[11] and civil procedure[12] under

---

[8] *See* sec. 905.04(2), Stats.

[9] Secs. 804.01(2)(d) and 804.10(3)(b), Stats.

[10] Sec. 804.10(2), Stats.

[11] *See supra* note 5.

[12] 67 Wis. 2d 585 (1975).

legislative authority[13] and under the court's inherent and implied powers. In the statutes discussed above, the court has therefore set the parameters for discovery of information to be obtained from a party's physicians. This judicial policy, in our opinion, excludes attempts at shortcuts around the procedural or evidentiary rules. These codes set forth rules that all litigants, lawyers and judges must follow. If they are not followed our legal system will lack procedural and evidentiary order. Of course, parties can voluntarily waive their interests under the procedural and evidentiary codes,[14] but if they do not, their opponents' only recourse is to follow the codes.

*By the Court.*—Judgment reversed.

---

[13] Sec. 251.18, Stats. (1973). This section was renumbered sec. 751.12, Stats., by sec. 82, ch. 187, Laws of 1977, effective August 1, 1978.

[14] *See* sec. 905.11, Stats., providing for voluntary disclosure of privileged information.