Joanne G. LANGDON and Ronald A. Langdon, Petitioners,

v.

David Lee CHAMPION, Sr., d/b/a the Champion Corporation, Respondent.

No. S–1919.

Supreme Court of Alaska.

Nov. 27, 1987.

Bernard P. Kelly, Steven Pradell, Paul Cossman, Bernard P. Kelly & Associates, Anchorage, for petitioners.

Kenneth P. Jacobus, Joe M. Huddleston, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for respondent.

Russell L. Winner, Mark Woelber, Winner & Associates, and William Grant Callow II, William Grant Callow II, PC, Anchorage, for amicus curiae, Alaska Academy of Trial Lawyers.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

BURKE, Justice.

In this case we are asked to resolve whether defense counsel in a personal injury action may engage in informal *ex parte* interviews with a plaintiff's treating physician. We conclude that such contacts are permissible. We emphasize, however, that while treating physicians are free to confer *ex parte* with defense counsel if they so desire, they cannot be compelled to do so.

### I

In July, 1986, Petitioner Joanne G. Langdon and her husband filed a negligence action against Respondent Champion seeking recovery for the injuries Joanne Langdon sustained when she fell through a trap door allegedly left open by Champion. At Champion's request, Langdon provided a signed medical waiver.[1] This waiver authorized Champion to obtain all Langdon's medical records, but permitted discussion of Langdon's medical conditions with her treating physician *only* in the presence of her counsel.

 Champion, considering Langdon's medical waiver inadequate, moved the trial court for an order compelling Langdon to execute an unrestricted waiver. Superior court judge Milton M. Souter granted Champion's motion, stating that "plaintiffs shall provide defendants with an executed medical waiver. Said waiver may specifically note that physicians are free to confer with defense counsel but are not compelled to do so." We subsequently granted Langdon's petition for review of Judge Souter's order.[2]

### II

In *Mathis v. Hilderbrand*, 416 P.2d 8, 10 (Alaska 1966), we first recognized the rule that the commencement of an action for personal injuries constitutes a waiver by the plaintiff of the physician-patient privilege in that action. In reversing the trial court's denial of the defendant's motion to compel plaintiff's treating physician to testify on pretrial deposition, we reasoned that a rigid enforcement of the privilege served no useful purpose and might result in injustice. *Id.*

A decade later, we reaffirmed and expanded *Mathis* in *Trans–World Investments v. Drobny*, 554 P.2d 1148 (Alaska 1976). In that case, we framed the issue as

---

1. The waiver signed by Langdon provides:

 This document does not authorize Hughes, Thorsness et al. or persons employed on their behalf to discuss the condition of the undersigned in the absence of a legal representative from the law offices of BERNARD P. KELLY & ASSOCIATES, attorneys for the undersigned, being present during such discussion, *but solely authorizes the release of copies of medical records.*

 *You are required to send to the law offices of BERNARD P. KELLY & ASSOCIATES an exact copy of documents produced to Hughes, Thorsness, et al.*

 The undersigned does hereby authorize and empower Hughes, Thorsness, et al., or persons employed on their behalf to inquire and obtain copies of any records concerning any matter which is relative to bodily injuries complained of by the undersigned, received on or about 11/26/84, the result of an on-the-job fall, including those matters which may have an historical or causal connection to those injuries.

 The undersigned does hereby consent that said doctors and hospitals who have treated the undersigned may give the medical and hospital information contained in their files to such investigators or authorized personnel bearing photostatic copies thereof.
 NAME /s/ Joanne G. Langdon
 Date of Birth 9/25/51

2. Whether a defendant's counsel has the right to engage in informal *ex parte* interviews with a plaintiff's treating physician is a question of law. *State ex rel. Klieger v. Alby*, 125 Wis.2d 468, 373 N.W.2d 57, 60 (App.1985). On questions of law, the standard of review is *de novo*. Under this standard it is our duty "to adopt the rule of law that is most persuasive in light of precedent, reason and policy." *Brooks v. Brooks*, 733 P.2d 1044, 1055 (Alaska 1987) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

"whether, *and to what extent*, the physician-patient evidentiary privilege is waived by virtue of the patient filing a personal injury lawsuit." 554 P.2d at 1149 (emphasis added). After discussing the history of the privilege and once again noting the widespread criticism of the doctrine we stated:

> Today we reaffirm the holding of the *Mathis* case and find a waiver of the physician-patient privilege based upon the filing of a personal injury lawsuit. Further, we hold that the filing of a personal injury action waives the physician-patient privilege as to all information concerning the health and medical history relevant to the matters which the plaintiff has put in issue. The scope of the waiver extends to all matters pertinent to the plaintiff's claim, including but not limited to those matters the relevancy of which is based on a historical or causal connection.

*Id.* at 1151 (footnotes omitted).

We then went on to consider "a dispute between the parties concerning the availability of *informal discovery methods.*" *Id.* (emphasis added). This dispute specifically involved the defense's right to "undertake discovery which is in the nature of *private conferences with the treating physician* in a matter being litigated." *Id.* (emphasis added). We resolved this dispute by stating:

> We find no legal impediments in existence which limit informal methods of discovery, such as *private conferences with the attending physicians*, or the voluntary exchange of medical information by the parties. In our opinion such informal methods are to be encouraged, for they facilitate early evaluation and settlement of cases, with a resulting decrease in litigation costs, and represent further the wise application of judicial resources.

*Id.* at 1151–52 (emphasis added, footnote omitted).

Less than a year later we again took up the issue of the waiver of the physician-pa-

tient privilege in *Arctic Motor Freight v. Stover*, 571 P.2d 1006 (Alaska 1977), because of conflicting lower court interpretations of *Drobny*.[3] 571 P.2d at 1007. In *Stover*, we strongly reaffirmed *Drobny*, stressing that when a waiver of the privilege has occurred, discovery should normally proceed without judicial participation. 571 P.2d at 1009. We stated: "[s]ince the filing of the personal injury suit is the operative fact of waiver, it should not be necessary for the defendant to file a formal request in court." *Id.* (quoting *Drobny*, 554 P.2d at 1152 n. 15). Additionally, after we reiterated our encouragement of the use of informal discovery methods we concluded:

> [W]e think it appropriate to *emphasize that waiver of the physician-patient privilege does not require physicians to speak with defense counsel; waiver merely removes barriers to physicians talking with defense counsel if they so choose.* By clarifying the scope of the waiver our disposition of the instant petition should encourage counsel to confer in good faith concerning discovery, to exchange information and to comply with requests "in a manner demonstrating candor and common sense."

*Id.* at 1009 (emphasis added).

█ *Drobny* and *Stover* clearly authorize informal *private* conferences between defense counsel and a treating physician. *Stover*, however, also makes clear that it is strictly within the discretion of the physician whether to engage in informal or *ex parte* contacts. Thus, a physician may refuse to discuss a case without his patient and/or the patient's attorney being present, and may even require the defendant to proceed with formal discovery. A defendant cannot force a treating physician to engage in informal private conferences, nor may the physician be ordered to do so by the court. On the other hand, a plaintiff cannot prevent private conferences if the physician is willing to engage in them.

---

**3.** Confusion among the lower courts was caused because in *Drobny* we affirmed two widely divergent waivers. *See Drobny*, 554 P.2d at 1149

n. 2. *See also*, Justice Rabinowitz' concurring opinion in *Drobny*. *Id.* at 1152.

While conceding that *Drobny* and *Stover* authorize informal private conferences, Langdon argues that these cases did not consider or approve *ex parte* conferences. According to Langdon, *Drobny* and *Stover* simply did not contemplate that private conferences with attending physicians were to be conducted in the absence of plaintiff's counsel. "Private," Langdon asserts, does not mean *ex parte* or secret, but only informal, i.e. the formal procedures of the civil rules do not apply.

Langdon's attempt to distinguish *Drobny* and *Stover*, and her argument that private conferences do not mean *ex parte* conferences, is not persuasive. As Champion points out, the phrase "private conferences with attending physicians" is not ambiguous. "Private" is defined as "belonging to some particular person or persons ... concerning or restricted to only one person or specific persons." *The Random House College Dictionary* 1054 (Rev. ed. 1984). "Private," then means only conferences between defense counsel and the treating physician—without the presence of plaintiff's counsel.

Indeed, not only did we approve private *ex parte* conferences in *Drobny*, we expressly rejected a case specifically forbidding such contacts.[4] Furthermore, our emphasis on the physician's choice in *Stover* clearly implies the right and ability of the physician to choose whether or not to discuss these matters in one-on-one meetings with defense counsel. Indeed, outside of such contexts, the choice would be relatively meaningless. Thus, logic dictates that our discussion in *Stover* of the physician's ability to choose, had to be referring to *ex parte* contacts. Any other interpretation makes this language superfluous.[5]

In the case at bar, Langdon signed a medical waiver which prohibited Champion's counsel from engaging in *ex parte* contacts with her treating physicians.[6] Judge Souter's order requires Langdon to remove this restriction but points out that the waiver can specify that Langdon's treating physicians may, but are not required to, consult *ex parte* with defense counsel. This order comports with *Drobny* and *Stover* and therefore must be affirmed.[7]

---

**4.** In *Drobny,* after pronouncing that no legal impediments existed to private conferences, we noted that "this method is preferable to the more formal method utilized in *Garner v. Ford Motor,* 61 F.R.D. 22 (D.Alaska 1973)." 554 P.2d at 1152 n. 13.

In *Garner,* the defendant in a diversity personal injury action had filed a motion to waive plaintiff's physician-patient privilege and sought an order specifically permitting its attorneys to confer, without the presence of plaintiff's counsel, with all plaintiff's treating physicians. 61 F.R.D. at 22. Chief Judge von der Heydt, noting that the Federal Rules of Civil Procedure did not make provision for the discovery of information by means of private conversations, denied defendant's motion to engage in informal private conferences with plaintiff's attending physicians, ordering in part:

> That if defendant desires information from plaintiff's attending physicians concerning the physical condition of plaintiffs, defendant should avail itself of one or more of the conventional discovery devices provided for by the Federal Rules of Civil Procedure.

*Id.* at 24.

**5.** We note that every other court which has considered *Drobny* and *Stover* has interpreted them as standing for the rule that *ex parte* interviews of attending physicians are allowed. *See Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128

(D.D.C.1983); *Green v. Bloodsworth,* 501 A.2d 1257, 1258–59 (Del.Super.1985); *State ex rel. Stufflebam v. Appelquist,* 694 S.W.2d 882, 887 (Mo.App.1985); *Jaap v. District Court of Eighth Judicial District,* 623 P.2d 1389, 1392 (Mont. 1981); *Stempler v. Speidell,* 100 N.J. 368, 495 A.2d 857, 862 (1985); *Anker v. Brodnitz,* 98 Misc.2d 148, 413 N.Y.S.2d 582, 584–85 (1979). *See generally* Annotation, *Discovery: Right to Ex Parte Interview with Injured Party's Treating Physician,* 50 A.L.R. 4th 714, 719–20 (1986) (discussing *Drobny* and *Stover* as standing for the view that defense counsel may interview injured party's treating physician *ex parte* ) (hereinafter Annotation). In fact, it is fair to say that *Drobny* and *Stover* are continually cited as leading cases standing for that rule.

**6.** *See supra* note 1.

**7.** Langdon's argument that attorney's fees are inappropriate in this case is a non-issue. Judge Souter awarded Champion no attorney's fees in the underlying action. We, therefore, decline to consider this argument. We note in passing, however, that in both *Drobny* and *Stover* we stated:

> Since the filing of the personal injury suit is the operative fact of waiver, it should not be necessary for the defendant to file a formal request in court. If defendant is required to

## III

We conclude that *Drobny* and *Stover* authorize defense counsel to engage in informal *ex parte* conferences with a plaintiff's treating physician. We emphasize, however, that it is within the discretion of treating physicians whether they wish to engage in such *ex parte* contacts. Accordingly, physicians may not be compelled to engage in informal *ex parte* contacts with defense counsel and likewise plaintiffs cannot prevent them from doing so.[8]

AFFIRMED.

obtain court-ordered waiver, then clearly costs and attorney fees are appropriate in all but the most unusual cases.
*Stover,* 571 P.2d at 1009 (quoting *Drobny,* 554 P.2d at 1152 n. 15).

8. We decline the invitation of amicus curiae, Alaska Academy of Trial Lawyers, to reconsider and overrule *Drobny* and *Stover.* In our opinion, the *Drobny* rule is sound. *Accord, Doe,* 99 F.R.D. at 128–29; *Bloodsworth,* 501 A.2d at 1258–59; *Coralluzzo v. Fass,* 450 So.2d 858, 859 (Fla.1984); *Appelquist,* 694 S.W.2d at 887–88; *Stempler,* 495 A.2d at 863–65. *See generally,* Annotation, *supra* note 5, at 719–21.

We recognize that other jurisdictions have specifically held that *ex parte* interviews are not allowed. *See Alston v. Greater Southeast Community Hosp.,* 107 F.R.D. 35 (D.D.C.1985); *Weaver v. Mann,* 90 F.R.D. 443 (D.N.D.1981); *Garner,* 61 F.R.D. 22; *Fields v. McNamara,* 189 Colo. 284, 540 P.2d 327 (1975); *Petrillo v. Syntex Laboratories,* 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952 (1986), *cert. denied sub nom. Tobin v. Petrillo,* —— U.S. ——, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987); *Roosevelt Hotel Ltd. Partnership v. Sweeney,* 394 N.W.2d 353 (Iowa 1986); *Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333 (1976); *Jaap,* 623 P.2d 1389; *Anker,* 125 Wis.2d 468, 413 N.Y.S.2d 582; *State ex rel. Klieger v. Alby,* 373 N.W.2d 57 (App.1985). *See also Muil v. String,* 448 So.2d 952 (Ala.1984) (dicta). *See generally* Annotation, *supra* note 5, at 725–31. We do not find the reasoning of these cases particularly persuasive, however.

These cases assert that merely permitting *ex parte* interviews violates the physician-patient privilege, infringes upon the patient's right to privacy, constitutes a breach of the fiduciary and confidential physician-patient relationship, and creates conflicts of interest. These arguments prove too much. There is no breach of those various obligations unless and until the physician discloses some confidential information. Any medical information relevant to the condition put in issue by the plaintiff is simply not privileged and can be freely disclosed. Alaska R.Evid. 504(d)(1); *Stover,* 571 P.2d at 1008–09; *Drobny,* 554 P.2d at 1150–51. *See also Bloodsworth,* 501 A.2d at 1259.

The possibility of intentional or inadvertent disclosure of confidential information does not cause us major concern. If a physician is worried about a breach of confidentiality, he can always refuse to involve himself in informal *ex parte* interviews or condition his compliance on the presence of plaintiff's and/or his own attorney. As to the possibility of intentional misconduct or overreaching, it suffices to say that we refuse to speculate about or impute such sinister motives to defense counsel or treating physicians. Moreover, adequate remedies exist if any such abuses do in fact occur. *E.g., Stempler,* 495 A.2d at 863; *Appelquist,* 694 S.W.2d at 888. Indeed, we believe that to disallow a viable, efficient, cost effective method of ascertaining the truth because of the mere possibility of abuse, smacks too much of throwing out the baby with the bath water.