JORDAN v SINAI HOSPITAL OF DETROIT, INC

Docket No. 103093. Submitted June 21, 1988, at Detroit. Decided
    September 7, 1988. Leave to appeal applied for.

Randolph G. Jordan, individually and as personal representative
    of the estate of Deborah E. Jordan, deceased, filed a medical
    malpractice and wrongful death action against Sinai Hospital
    of Detroit, Inc., and others in Wayne Circuit Court seeking
    recovery for the loss of his wife allegedly due to the treatment
    and care rendered at Sinai Hospital. Three doctors who treated
    the decedent at Sinai after she lapsed into a coma were not
    charged with any malpractice and were not named as defen-
    dants in the suit. The records of their diagnosis and treatment
    of the decedent were made available to all parties. Defense
    counsel sought an ex parte meeting with one of the three
    doctors to discuss the doctor's care and treatment of the dece-
    dent. The doctor declined to meet with defense counsel without
    a court order authorizing the meeting. Sinai Hospital filed a
    motion to authorize an informal meeting with decedent's treat-
    ing physicians, contending that it has a right to interview the
    medical personnel involved in the care and treatment of dece-
    dent absent an assertion of the statutory physician-patient
    privilege. Plaintiff did not assert a privilege as to the medical
    records or the testimony of the treating physicians and main-
    tained that Sinai had the right to take depositions and sub-
    poena the physicians to testify at trial, but argued that the
    fiduciary relationship between patient and physician precludes
    a physician from holding an ex parte meeting with defense
    counsel and that in a case where a decedent's treating physi-
    cians are staff doctors at the defendant hospital ex parte
    interviews are inherently inappropriate and contrary to the
    very nature of the physician-patient relationship. The court, J.
    Phillip Jourdan, J., denied defendant's motion. Defendant ap-
    pealed by leave granted.
        The Court of Appeals held:

REFERENCES
Am Jur 2d, Witnesses §§ 230 et seq.
Discovery: right to ex parte interview with injured party's treating
    physician. 50 ALR4th 714.

1. A physician's ethical and legal duty not to reveal confidences and the importance and necessity of that trust to both the patient and the medical profession require that both the physician and the patient be protected by the use of only formal methods of discovery. The physician's fiduciary duty to his patient precludes any ex parte conferences with his patient's adversary, and there is no need for ex parte interviews because opposing parties are able to obtain all relevant evidence via the discovery rules.

2. The physician-patient privilege is not automatically waived upon the filing of a lawsuit and may be asserted by the patient at any time in response to a request for medical information. Thus, a court cannot order ex parte interviews without the patient's consent. The privilege belongs to the patient and a court cannot compel waiver of the privilege.

3. The trial court did not err in denying defendant's motion to conduct ex parte interviews with the physicians.

Affirmed.

1. PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — EX PARTE INTERVIEWS.

The physician-patient privilege of confidentiality is not waived upon the filing of a lawsuit by the patient against a third party; the privilege belongs to the patient, its waiver cannot be compelled by a court, and it may be asserted at any time; therefore, a court cannot order informal, ex parte interviews between the physician and the patient's opposing party without the patient's consent.

2. NEGLIGENCE — WRONGFUL DEATH — MEDICAL MALPRACTICE — PHYSICIANS AND SURGEONS — HOSPITALS — EX PARTE INTERVIEWS.

A court cannot authorize an informal, ex parte interview between a defendant hospital and a decedent's nonparty, treating physicians in a wrongful death medical malpractice action without the consent of the plaintiff even though the plaintiff has not asserted his physician-patient privilege of confidentiality.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Richard L. Groffsky*), for plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman*), for defendant.

Before: Cynar, P.J., and Sullivan and J. R. Ernst,* JJ.

Cynar, P.J. Defendant Sinai Hospital of Detroit, Inc., appeals by leave granted from a September 1, 1987, order denying its motion to authorize an informal meeting between plaintiff's decedent's treating physicians and the hospital's attorneys.

Plaintiff, Randolph G. Jordan, commenced this wrongful death medical malpractice action seeking recovery for the loss of his wife allegedly due to the treatment and care rendered at Sinai Hospital. Specifically, plaintiff alleges that Sinai Hospital and Donald R. Blitz, M.D., were negligent and committed malpractice by failing to properly diagnose and treat preeclampsia which arose during the course of plaintiff's decedent's pregnancy. This allegedly caused a cerebral hemorrhage along with the labor and delivery of decedent's child on October 14, 1985, and allegedly resulted in decedent's death on October 21, 1985.

Two neurologists, Drs. Lawrence Eilender and John Gilroy, and a neurosurgeon, Dr. Philip Friedman (treating physicians), rendered care to decedent at Sinai following her lapse into a coma. The treating physicians have not been charged with any malpractice nor are they defendants in the case. The records of the treating physicians' diagnosis and treatment of plaintiff's decedent have been made available to all parties.

Defense counsel for Sinai contacted Dr. Eilender to schedule an ex parte meeting to discuss the doctor's care and treatment of plaintiff's decedent. Dr. Eilender, however, was reluctant to meet with defense counsel without a court order authorizing such a meeting. Defense counsel then asked plain-

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff's counsel to stipulate to an order authorizing an ex parte interview. Plaintiff's counsel refused.

Subsequently, on July 10, 1987, the hospital filed a motion to authorize informal meetings with decedent's treating physicians. The hospital contended that it had a right to interview the medical personnel involved in the care and treatment of decedent, absent an assertion of the statutory physician-patient privilege.

Plaintiff's response to defendant's motion stated that plaintiff was not asserting a privilege as to the medical records or the testimony of the treating physicians. Plaintiff maintained that the hospital has the right to take depositions and subpoena the treating physicians to testify at trial. However, the "fiduciary relationship" between patient and physician precludes a physician from holding an ex parte meeting with defense counsel. Plaintiff further argued that, in a case such as the one at bar where decedent's treating physicians are staff doctors at defendant hospital, ex parte interviews are inherently inappropriate and contrary to the very nature of the physician-patient relationship.

Following the hearing on the motion, the trial judge denied the motion, stating:

> *The Court:* I think what we are talking about here is it's a very special kind of a relationship, the relationship of doctor to patient, and whether or not anybody is going to use this person in a trial is irrelevant here. What we are talking about is that in order to protect the relationship between patient and physician, the patient's attorney ought to be present at the interview. I think it, the material is relevant to the case whether this person is a witness or not, and is discoverable, and do it by deposition.
> *Mr. Cirocco: [counsel of Sinai Hospital]* So therefore the fiduciary relationship is protected when

opposing Counsel is there to protect; is that your holding?

*The Court:* I don't have to hold that. I am just saying that you're asking for the right to question a sacred relationship here without plaintiff's counsel being present. I don't think that's necessary and I haven't seen any law that says that it must be allowed. Therefore I am not going to allow it. It's, you know it's just as simple as that.

An order denying defendant's motion was entered on September 1, 1987. Leave to appeal was granted on September 9, 1987.

The sole issue before the Court is whether the trial court erred in denying defendant's motion to informally interview decedent's treating physicians. Before we begin our analysis, we note that this issue is also currently before this Court in two other consolidated cases: *Loso v St Lawrence Hospital* (Docket Nos. 92884 and 95260), and *Hegwood v Peoples Community Hospital Authority* (Docket No. 93108). Leave has been held in abeyance in *Gelispie v St Lawrence Hospital* (Docket No. 96496) pending the decision in *Loso* and *Hegwood.*

On appeal, the hospital argues that informal ex parte interviews with nonparties are a long-standing, legitimate, and crucial part of the discovery process in civil litigation. Defendant hospital claims that ex parte discussions provide an inexpensive and timesaving method of discovery and promote early evaluation and settlement of cases. Plaintiff should not be permitted to assert the existence of a physician's fiduciary duty and the patient's right to confidentiality and nondisclosure to preclude defendant from speaking informally with the treating physicians while plaintiff is able to do so.

In addition, the hospital maintains that, by placing decedent's medical condition in issue, plaintiff

has destroyed the fiduciary relationship between physician and patient and has transformed the treating physicians into ordinary fact witnesses. Plaintiff should not be permitted to waive and then reassert the physician-patient privilege. Courts in several other jurisdictions have recognized and sanctioned a defendant's right to ex parte interviews. Defendant hospital urges this Court to follow those jurisdictions which permit ex parte interviews.

Plaintiff, on the other hand, argues that Michigan case law does not clearly support ex parte meetings between treating physicians and defense attorneys. In fact, plaintiff alleges that the physician-patient privilege bars such ex parte discussions and permits discovery of a patient's medical condition only through formal methods of discovery.

The hospital claims that this Court has expressly sanctioned ex parte interviews of nonparty treating physicians in the personal injury case of *Gailitis v Bassett*, 5 Mich App 382; 146 NW2d 708 (1966). The *Gailitis* Court held:

> With respect to the *authorized interview* of one of plaintiff's attending physicians, PA 1961, No 236, § 2157 (CLS 1961, § 600.2157, Stat Ann 1962 Rev § 27A.2157) provides for waiver of physician-patient privilege in malpractice actions in case plaintiff produces any physician as a witness in his behalf, who has treated him for injury, disease or condition with reference to which malpractice is alleged. GCR 1963, 302.1 permits *deposing* the physician involved but GCR 1963, 302.4 restricts use of the *deposition* to testimony "admissible under the rules of evidence." Admissibility of any evidence obtained by defendant from the physician is governed by the terms of the statute, *supra,* and we are bound to presume the trial court will follow the law, until the contrary is shown. *Wagar v*

*Peak,* (1871) 22 Mich 368. We find no error in authorizing defendant's counsel to *interview* plaintiff's physician. [Emphasis supplied. 5 Mich App 383-384.]

Citing *Gailitis* in a peremptory order, this Court directed the trial court, in a case where the plaintiff had not asserted the physician-patient privilege, to allow the defendants to interview the treating physicians. *Lusko v Rubenfire,* order of the Court of Appeals, released October 31, 1983 (Docket Nos. 71222, 71223). In *Lusko,* the panel noted:

Absent assertion of a valid privilege, a party has the right to interview any witness, *Socha v Passina,* 405 Mich 458 [275 NW2d 243] (1979), albeit the witness may choose not to consent to an interview, but see Code of Professional Responsibility, DR7-109(B), in which event resort must be had to the compulsory procedures of Chapter 30 of the General Court Rules.

DR7-109(B) states that it is unethical for an attorney to suborn a witness not to cooperate with opposing counsel in consenting to interviews or providing information. The reference to Chapter 30 of the General Court Rules was to the rules governing depositions, whether orally or on written interrogatories, for which the consent of the witness is not required, in contrast to an interview situation.

Initially, we note that *Gailitis* and the two peremptory orders preceded the new Michigan Court Rules, thereby leaving a question whether, even if ex parte interviews were once permissible, informal interviews are still viable under the new court rules. Secondly, and more importantly, the *Gailitis* holding is unclear as to what exactly the Court

held even under the old court rules. The opinion refers to an "authorized interview" and then cites the court rules regarding deposing of a physician and the use of that deposition at trial. We are of the opinion that, due to the Court's reference to GCR 1963, 302.1 (when depositions may be taken) and GCR 1963, 302.4 (use of depositions), the Court upheld the trial court's decision to allow the defendants to "interview" the plaintiff's physician by way of deposition. We do not read the Court's holding to mean that by use of the word "interview" the Court was sanctioning an ex parte interview. Contrary to defendant hospital's contention, this Court has not expressly sanctioned ex parte interviews of nonparty treating physicians.

Thus, this issue is one of first impression. An examination of the treatment of this issue in other jurisdictions is therefore appropriate. The hospital cites the following numerous cases from other jurisdictions in support of ex parte interviews: *Trans-World Investments v Drobny,* 554 P2d 1148 (Alas, 1976); *Arctic Motor Freight, Inc v Stover,* 571 P2d 1006 (Alas, 1977); *Doe v Eli Lilly & Co, Inc,* 99 FRD 126 (D DC, 1983); *Coralluzzo v Fass,* 450 So 2d 858 (Fla, 1984); *Lazorick v Brown,* 195 NJ Super 444; 480 A2d 223 (1984); *State ex rel Stufflebam v Appelquist,* 694 SW2d 882 (Mo App, 1985); *Stempler v Speidell,* 100 NJ 368; 495 A2d 857 (1985); *Green v Bloodsworth,* 501 A2d 1257 (Del Super, 1985); and *Langdon v Champion,* 745 P2d 1371 (Alas, 1987).

*Drobny, supra, Stover, supra,* and *Langdon, supra,* are all personal injury cases arising out of Alaska. In *Drobny,* the court was called upon to determine whether, and to what extent, the physician-patient evidentiary privilege was waived by virtue of the patient's filing a personal injury lawsuit. The court held that, in Alaska, the filing

of a personal injury action waives the privilege as to all information concerning the health and medical history relating to the matters which the plaintiff has put in issue. 554 P2d 1151. In addition, with respect to defense counsel's right to have private conferences with the treating physician, the court held:

> We find no legal impediments in existence which limit informal methods of discovery, such as private conferences with the attending physicians, or the voluntary exchange of medical information by the parties. In our opinion such informal methods are to be encouraged, for they facilitate early evaluation and settlement of cases, with a resulting decrease in litigation costs, and represent further the wise application of judicial resources. [554 P2d 1151-1152.]

This holding was affirmed and further explained in *Stover, supra,* and in *Langdon, supra.* In *Stover,* the court stated that the waiver of the privilege did not *require* physicians to speak with defense counsel; waiver merely removed the barrier to physicians speaking with defense attorneys if they so chose. 571 P2d 1009.

In *Langdon,* the plaintiff had signed a medical waiver prohibiting defense counsel from engaging in ex parte contacts with her treating physicians. The trial court ordered the restriction removed, but pointed out that the physicians were not required to consult ex parte with defense counsel. In affirming the decision of the lower court, the *Langdon* court held:

> *Drobny* and *Stover* clearly authorize informal *private* conferences between defense counsel and a treating physician. *Stover,* however, also makes clear that it is strictly within the discretion of the

physician whether to engage in informal or *ex parte* contacts. Thus, a physician may refuse to discuss a case without his patient and/or other patient's attorney being present, and may even require the defendant to proceed with formal discovery. A defendant cannot force a treating physician to engage in informal private conferences, nor may the physician be ordered to do so by the court. On the other hand, a plaintiff cannot prevent private conferences if the physician is willing to engage in them. [Emphasis in original. 745 P2d 1373.]

The *Langdon* court made it clear that "private conferences" means "conferences between defense counsel and the treating physician—without the presence of plaintiff's counsel," but the emphasis was on "physician's choice." *Id.,* p 1374.

*Doe v Eli Lilly, supra,* was a DES case (involving the synthetic estrogen diethylstilbestrol) in which the defendant moved for an order to compel the plaintiffs to execute appropriate written forms addressed to their various physicians authorizing them to release to defense attorneys such information about them as the physicians may have acquired in a privileged capacity. The plaintiffs were unwilling to execute the waivers of the privileges in a manner which would enable the defendant to conduct ex parte interviews. In permitting the informal discovery, the court stated:

As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. [99 FRD 128.]

The *Doe* court noted that the Federal Rules of

Civil Procedure, while providing certain specific formal discovery methods, have never been interpreted as precluding informal discovery devices such as an ex parte interview of a witness who is willing to speak. *Id.,* p 128.

*Lazorick, supra,* is a New Jersey medical malpractice case. The plaintiffs had refused to furnish written authorization to allow defense counsel to discuss the plaintiff-patient's medical condition with her treating doctors (who were not parties to the suit). The defendants had moved to compel the plaintiffs to issue the authorization, contending that the plaintiffs' attorneys were free to discuss the plaintiff's medical condition with the physicians and the defendants should have the same right. The trial court denied the motion. Despite the court order, the defendants set up a meeting with the doctors. The plaintiffs did not move for a protective order. The defendants met with one physician and received reports from the other. The plaintiffs then moved to bar the doctors' testimony at trial. The trial judge excluded the testimony. 195 NJ Super 450.

The New Jersey Superior Court reversed and stated that there was nothing in the court rules or rules of evidence barring an attorney from obtaining nonprivileged information through informal discussions with a potential witness. While the physician is not required to participate in such discussion, there is no law prohibiting the doctor from revealing unprivileged information. *Id.*

The *Lazorick* court also held that the discovery rules in New Jersey were never conceived as the exclusive means of discovery. *Id.,* p 454. In fact, the *Lazorick* court found that sound policy reasons favor informal methods of discovery since they are less costly, less time consuming, more practical, and efficient. The right given to defendants to hold

ex parte meetings with physicians does not oblige the physicians to cooperate with defendants. *Id.,* pp 455-456. The court further explained:

> [P]laintiffs cannot prevent defendants and their attorneys from speaking privately with plaintiff's other treating physicians about any matter that is not privileged. To allay the concerns of a doctor who may be interviewed by defense counsel, a plaintiff should be required to sign a document which authorizes the release of such unprivileged information. As stated above, the authority to release information to a patient's adversary does not place any obligation upon treating doctors to cooperate with that adversary. A doctor need not serve voluntarily as an expert for his patient's adversary in litigation. Except for obligations to their patients, doctors may refuse to divulge any information or to give any opinion unless compelled to do so by judicial process. [*Id.,* pp 456-457.]

In *Stuffelbam, supra,* the plaintiff was willing to permit a nonrecorded, face-to-face interview with his treating physician if the plaintiff's counsel was present and the physician consented to the interview. The defendant sought an ex parte meeting. The Missouri court examined cases from other jurisdictions on this issue and quoted extensively from *Doe v Eli Lilly, supra,* on the policy reasons justifying ex parte interviews. 694 SW2d 888.

Ultimately, the *Stuffelbam* court held that the defendant's attorneys could obtain a court order compelling the plaintiff to execute an authorization permitting them to meet privately with the plaintiff's physicians. *Id.* However, the court also noted that a court *may not* compel the physician to grant such an interview. *Id.*

Cases which lend support to plaintiff's position include the following: *Hammonds v Aetna Casualty & Surety Co,* 243 F Supp 793 (ND Ohio, 1965);

*Weaver v Mann,* 90 FRD 443 (D ND, 1981); *Garner v Ford Motor Co,* 61 FRD 22 (D Alas, 1973); *Mull v String,* 448 So 2d 952 (Ala, 1984); *Wenninger v Muesing,* 307 Minn 405; 240 NW2d 333 (1976); *Jaap v District Court of 8th Judicial District,* 623 P2d 1389 (Mont, 1981); *Anker v Brodnitz,* 98 Misc 2d 148; 413 NYS2d 582 (1979), aff'd 73 App Div 2d 589; 422 NYS2d 887 (1979); *Alexander v Knight,* 197 Pa Super 79; 177 A2d 142 (1962); *State ex rel Klieger v Alby,* 125 Wis 2d 468; 373 NW2d 57 (1985); *Petrillo v Syntex Laboratories, Inc,* 148 Ill App 3d 581; 499 NE2d 952 (1986).

*Hammonds* was a medical malpractice action against a hospital for an injury. The attorney for the defendant insurance company, on behalf of the attorney for the hospital, allegedly induced the plaintiff's treating physician to divulge confidential information, gained through the doctor-patient relationship, on the false pretext that the patient was contemplating a medical malpractice suit against the physician. The plaintiff then sued the insurance company.

The court held that part of a doctor's duty of total care requires him to offer his medical testimony on behalf of his patient if the patient becomes involved in litigation over the injury or illness which the doctor treated. In addition to the duty of secrecy, there arises a duty of undivided loyalty. 243 F Supp 799. The court stated that in every doctor-patient relationship, there is an implied promise that any confidential information gained through the relationship will not be released without the patient's permission. This is reflected in the Hippocratic Oath. Its purpose is to promote full disclosure. Public policy, reflected in the medical codes of ethics, the privileged communications statute, and the State Medical Licensing Statute, demands that doctors obey their implied

promise of secrecy. If a doctor reveals any of these confidences, he effects an invasion of the privacy of his patient. *Id.,* pp 796-797, 801. The situation drawn by the allegations of the complaint is repugnant to the public policy of Ohio. The preservation of a patient's privacy is no mere ethical duty on the part of the doctor; there is a legal duty as well. The unauthorized revelation of confidential information is tortious conduct which may be the basis for an action in damages. *Id.,* pp 801-802. The court held that one who induces a doctor to divulge confidential information in violation of that doctor's legal responsibility to his patient may also be held liable in damages to the patient. *Id.,* p 803.

In *Garner, supra,* the court did not permit an ex parte meeting on the basis that the rules of procedure do not provide such a method of discovery. 61 FRD 23-24. In *Wenninger, supra,* the Minnesota court was called upon to decide whether unilateral, private interviews with the patient's attending physicians were contemplated by the procedure rules after a waiver of the privilege. 307 Minn 406.

The *Wenninger* court held that the physician-patient privilege belongs to the patient and may be waived only by the patient. Private interviews with a plaintiff's physician are not mentioned in the rules. *Id.,* pp 407-408. The rules do not contemplate unilateral, private interviews by the inquiring party of the waiving party's treating physicians. The rules contemplate that all medical evidence will be obtained through written reports or depositions (which must be obtained by order of the court). The purpose of the rules is to provide complete disclosure of relevant medical information while at the same time to protect the medical profession against unnecessary harassment or involvement in the discovery procedure. The court

held that the procedure set forth in the rules is the exclusive means by which an adverse party may discover testimony relevant to a patient's condition. *Id.,* p 410. The court supported its holding by stating that the use of conventional discovery procedures protects against disclosure of irrelevant medical information and "allays a patient's fears that his doctor may be disclosing personal confidences." *Id.,* p 411.

In Wisconsin, there is a statutory physician-patient privilege which is owned by the patient. In *Klieger, supra,* the court was asked to decide if Wisconsin law barred defense counsel from having private talks with plaintiff's treating doctor. The court found that these ex parte meetings were barred. 125 Wis 2d 473-474. The court noted that the commencement of a lawsuit did not automatically waive the privilege to the extent of allowing informal discussions with treating physicians over plaintiff's objection. *Id.* To order these meetings, the court concluded, would breach the privilege, which solely belongs to the patient. *Id.,* p 474.

Finally, in *Petrillo, supra,* the court held that the patient's implied consent (in filing suit) is only to the release of medical information relevant to the suit pursuant to the discovery techniques found in the court rules. The court opined that filing suit does not automatically terminate the confidential relationship that exists between patient and physician. The patient does not consent to his physician's discussing medical confidences with third parties without court-approved discovery methods by the mere filing of a complaint. 148 Ill App 3d 591.

In *Petrillo,* the defendant presented ten arguments in support of ex parte interviews. Before addressing the arguments, the court found undisputed the fact that ex parte meetings do not

generate greater evidence than that obtainable by regular discovery. *Id.,* pp 586-587.

In rejecting the defendant's public policy argument for ex parte conferences, the court stated that public policy strongly favors the confidential and fiduciary relationship between physician and patient. This policy is reflected in the medical profession's code of ethics and the nature of the fiduciary relationship which exists due to a physician's unique role in society recognized by Illinois courts and throughout the United States. The patient should be able to rely on physicians to execute their ethical obligations and protect the confidential nature of the physician-patient relationship. Ex parte conferences jeopardize this relationship by allowing doctors to discuss medical confidences without the patient's consent. In addition, a fiduciary relationship based on trust, loyalty, and competence exists between patient and physician. An implied promise that the physician will refrain from engaging in any conduct inconsistent with the "good faith" required of a fiduciary arises when a physician treats a patient. The patient has the right to expect that the physician will provide medical information sought by the patient's adversary pursuant only to court-authorized methods of discovery. Ex parte conferences between defense counsel threaten and undermine the fiduciary nature of the physician-patient relationship and, therefore, were barred as against public policy. *Id.,* p 593.

As to the defendant's argument that ex parte conferences are less costly, more efficient, and may avoid scheduling problems, the *Petrillo* court held that these were not sufficient reasons to carve an exception to the rules of discovery. Oral depositions are not the only means available to obtain the opinion of the treating physician. A deposition

upon written questions is less costly and copies of all relevant medical records are easily obtainable pursuant to the rules. *Id.,* pp 596-597.

Finally, the *Petrillo* court recognized that those jurisdictions which permit ex parte conferences err in doing so because they seek to deal with a question of great societal importance by merely looking at a set of codified rules and procedures for the answer. Those jurisdictions fail to recognize that a physician is ethically required not to discuss with a third party patient confidences absent patient consent, they demonstrate a gross lack of regard for the confidential and fiduciary relationship existing between patient and physician, and they neglect to take public policy into account. *Id.,* pp 609-610.

We find that the *Petrillo* court and those cases which do not allow ex parte interviews offer the better view on this issue. The public policy arguments outweigh any of the defendants' contentions. A physician cannot be treated like an ordinary witness because of the physician-patient privilege and the public policy which supports that privilege. The physician's ethical and legal duty not to reveal confidences and the importance and necessity of that trust to both the patient and the medical profession require that both the physician and the patient be protected by the use of only formal methods of discovery. The physician's fiduciary duty to his patient precludes any ex parte conferences with his patient's adversary. The fact that defense attorneys are able to obtain all relevant evidence via the discovery rules shows that there is no need for ex parte interviews.

We also reject defendant hospital's assertion that ex parte interviews are less costly, more efficient, provide for easier evaluation, lead to early settlements, and promote the search for

truth. Our discovery rules allow discovery of all relevant matter which is not privileged, MCR 2.302(B)(1), through the use of interrogatories and requests for admissions and production of documents, as well as depositions.

The strongest argument against ex parte interviews is found within our own court rules. MCR 2.314(A)(1)(b) states:

> When a mental or physical condition of a party is in controversy, medical information about the condition is subject to discovery under MCR 2.310 to the extent that
>
>     \*    \*    \*
>
> the party does not assert that the information is subject to a valid privilege.

MCR 2.314(B)(1) affords a party the right to assert the privilege and prevent discovery of medical information relevant to his or her mental or physical condition. The privilege must be asserted in the party's written response under MCR 2.310 (production of documents and things). The assertion of the privilege results in the sanction that the party may not thereafter present or introduce any physical, documentary, or testimonial evidence relevant to the patient's medical history or mental or physical condition. MCR 2.314(B)(2). A party who is served with a request for production of medical information under MCR 2.310 may assert that the information is privileged. MCR 2.314(C)(1)(b). A party who has a privilege may assert it at a deposition, subject to the sanction that he may not at the trial offer the testimony of the deponent pertaining to the evidence objected to at the deposition. MCR 2.302(B)(1)(b). In explaining the nature of the court rule, it was stated in 2 Martin, Dean & Webster, Michigan Court Rules Practice, p 168:

Subrule 2.302(B)(1)(b) retains the substance of GCR 302.2(1) forbidding a party who has invoked a privilege at a deposition from offering at trial the testimony of the deponent pertaining to the evidence objected to at the deposition. The rule also provides that a party who possesses a privilege regarding part or all of the testimony of a deponent must either assert the privilege at the time of the deposition or lose the privilege for purposes of that action. If the privilege is invoked, the sanction referred to above is applied.

This subrule, which has no Federal counterpart, has two operative effects under Michigan law. It clearly establishes that a person possessed of a privilege may exercise that privilege at any stage of the proceedings, and that the privilege is not limited to trial. It also solves a growing problem in the Federal system by answering, for Michigan practice, what sanctions, if any, may be invoked if a party exercises a privilege, thereby frustrating discovery proceedings.

The Michigan rule in no way restricts or limits a person's right to exercise any privilege that person might possess. The rule recognizes, however, that it is patently unfair for a party to assert a privilege during pretrial proceedings, frustrate rightful discovery by the other party, and then voluntarily waive that privilege at trial, thereby catching the opposing party unprepared, surprised, and at an extreme disadvantage. Thus the rule requires that a party choose between the existing privilege and the desired testimony. The party may not have both.

The rule is rational in its design because the fundamental concept behind the rule of privilege is that one should not be forced to divulge certain information, certain communications, etc. The essence of the privilege is the lack of disclosure, not the time of disclosure.

Given that a patient may assert the privilege at any time in response to a request for medical information, we believe that in Michigan, unlike

the other jurisdictions, the privilege is not automatically waived upon the filing of a lawsuit. Therefore, a court cannot order ex parte interviews without the patient's consent; the court cannot compel waiver of the privilege because the privilege belongs to the patient. *Gaertner v Michigan,* 385 Mich 49, 53; 187 NW2d 429 (1971). It necessarily follows that, if a court cannot compel a patient to waive the privilege, a court cannot compel the treating physician to engage in an ex parte interview. It is noteworthy that in those jurisdictions which permit ex parte interviews, the courts found the privilege to have been waived based on their rules of procedure. In addition, because the courts could not find any prohibition against ex parte conferences, the courts assumed that they were permissible. However, the more interesting aspect of those cases allowing informal discovery is the fact that the courts were unwilling to *compel* the doctors to appear for these ex parte conferences. Similarly, even if we find a waiver of the privilege due to the commencement of this action, plaintiff's treating physicians cannot be compelled to attend.

Finally, we believe that public policy favors the need to prohibit ex parte interviews. The physician's ethical duty of loyalty and the implied promise of confidentiality which arise upon treatment favor a bar on ex parte interviews, as does the fiduciary nature of the relationship between patient and physician. The formal rules of discovery provide defense counsel with all relevant information. Further, because our new court rules provide the plaintiff with the opportunity to assert the physician-patient privilege at any time, it is absolutely necessary that plaintiff's counsel be present at any face-to-face meeting between defense counsel and plaintiff's treating physicians to

protect both the plaintiff and the physician. Additionally, we believe that if *Gailitis, supra,* did sanction ex parte interviews, it has been overruled by the new court rules.

Under present Michigan law, we hold that the trial court did not err in denying the hospital's motion to conduct ex parte interviews with plaintiff's decedent's treating physicians.

Affirmed.