**TRANS–WORLD INVESTMENTS and Suburban Realty, Inc., Petitioners,**

v.

**Richard H. DROBNY, Respondent.**

**Carol VERVICK and Larry Vervick, Petitioners,**

v.

**ANCHORAGE, a municipal corporation, Respondent.**

**No. 2990.**

Supreme Court of Alaska.

Sept. 30, 1976.

John W. Pletcher, III, Anchorage, for Trans-World.

Peter A. Galbraith, Anchorage, for Vervick.

Karen L. Hunt, Anchorage, for Drobny.

John W. Pletcher, III, Anchorage, for City of Anchorage.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

ERWIN, Justice.

The court is required to determine in these petitions whether, and to what extent, the physician-patient evidentiary privilege is waived by virtue of the patient filing a personal injury lawsuit.[1] Because the privilege in issue has been subject to diverse interpretations not only in Alaska's courts,[2] but in the United States District Court for the District of Alaska[3] as well, we feel compelled to review the cases at this time.[4]

In the matter brought by petitioner Vervick, the parties jointly contend a vehicular accident took place on the 10th of December, 1975, between a truck driven by Carol Vervick and an Anchorage maintenance truck. As a result of this accident Mrs. Vervick sought and obtained medical treatment. Later, suit was filed in the nature of a personal injury action, naming Carol

1. *Mathis v. Hilderbrand*, 416 P.2d 8 (Alaska 1966); ARCP 26(b)(1).

2. The order in *Vervick v. Anchorage*, Case No. 76–2111, provided:

   IT IS ORDERED that the physician-patient privilege of the plaintiff, Carol Vervick, is waived and that the defendant or its representatives are empowered to inquire of all physicians, hospitals, clinics, chiropractors, nurses, therapists or other similar person relative to the physical condition of the plaintiff, Carol Vervick, and to acquire from these individuals, corporations and entities, such documents and materials, records, notes and physical evidence as are in their possession.

   The order in *Trans-World Investments, et al. v. Drobny*, Case No. 76–1531, provided:

   It is ordered that the physician-patient privilege of Richard H. Drobny is waived and that the defendants or their representatives are entitled to inquire of physicians, clinics, chiropractors, nurses, therapists or other similarly situated persons concerning any matter which is relevant to bodily injuries: (1) complained of by Richard H. Drobny; and (2) received on or about January 29, 1976, allegedly the result of a slip and fall accident.

See the opinions and orders of the superior court in *Arruda v. Hartman* (Third Judicial District, Superior Court Case No. 75–6023); *Call v. Artic Dispatching* (Third Judicial District, Superior Court Case No. 75–6876); and *Shannon v. Jenks* (Fourth Judicial District, Superior Court Case No. 75–937), all of which present differing interpretations of this issue.

3. *Garner v. Ford Motor Co.*, 61 F.R.D. 22 (D.C.Alaska 1973). It might also be noted that with the passage of the Federal Rules of Evidence, 88 Stat. 1926, the federal courts still must concern themselves with the interpretation of state privileges by virtue of Rule 501, which states in part,

   . . . in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, or government, State, or political subdivision thereof shall be determined in accordance with State law.

4. Alaska Rules of Appellate Procedure, Rule 24(a) provides that review may be granted by this court.

Vervick and her husband, Larry Vervick, as plaintiffs, and the Municipality of Anchorage as party defendant. As the litigation proceeded a motion was filed by Anchorage to waive the physician-patient privilege; and on the 16th of June, 1976, this motion was granted by Superior Court Judge Victor D. Carlson. It is the order granting this motion which forms the subject of the *Vervick* petition.

In the *Trans-World Investments* petition, the action arises out of an alleged slip and fall which purportedly took place on the 29th of January, 1976, as Richard Drobny exited an apartment building. After the filing of a personal injury action by Drobny against Trans-World Investments on the basis it owned or operated the premises which constituted the scene of the accident, defendant Trans-World moved for an order waiving the physician-patient privilege on the same basis and to the same scope as that granted in the *Vervick v. Anchorage* case. Superior Court Judge Eben Lewis entered an order; however, its terms were significantly different from those of the *Vervick* order, restricting inquiry to ". . . any matter which is relevant to bodily injuries: (1) complained of by Richard H. Drobny; and (2) received on or about January 29, 1976, allegedly the result of a slip and fall accident." It is from this order that the *Trans-World* petition arises.

We begin by noting the physician-patient privilege has historically had as its justification the encouragement of freedom of disclosure by the patient, this so as to aid the physician in his diagnosis and treatment of injury or disease.[5] In order to achieve this objective, the privilege afforded the patient protection against embarrassment and invasion of privacy which might result from such a disclosure.

The application of the privilege, however, has fostered problems collateral to those it sought to cure. Serious problems in certain types of litigation, particularly those matters where the physical condition of the patient constitutes an issue of prime importance to the fact finder, have lead many commentators to question its value. Professor Wigmore has observed:

> It is certain that the practical employment of the privilege has come to mean little but the suppression of useful truth —truth which ought to be disclosed and would never be suppressed for the sake of any inherent repugnancy in the medical facts involved. Ninety-nine per cent of the litigation in which the privilege is invoked consists of three classes of cases . . . [(1) actions on policies of life insurance where deceased's representations of his health are involved, (2) actions for bodily injury, and (3) testamentary actions where testator's mental capacity is involved] . . . . In all of these the medical testimony is absolutely needed for the purpose of learning the truth. In none of them is there any reason for the party to conceal the facts, except as a tactical maneuver in litigation. . . . In none of these cases need there be any fear that the absence of the privilege will subjectively hinder people from consulting physicians freely. The actually injured person would still seek medical aid . . . .

> There is little to be said in favor of the privilege, and a great deal to be said against it. The adoption of it in any other jurisdictions is earnestly to be deprecated. (Footnotes omitted) [6]

---

5. Thus, when New York in 1829 became the first state to depart from the common law position by way of legislative enactment and thereby to create this privilege, N.Y.Rev. Stats.1829, Vol. II, Part III, C. 7, Tit. 3, art. eight, § 73, the New York Commissioners on Revision in justifying the new privilege said, "unless such consultations are privileged men will be incidentally punished by being obliged to suffer the consequences of injuries without relief from the medical art." N.Y.Rev.Stats. 2d ed., Vol. III, p. 737 (1836).

6. Wigmore on Evidence, vol. 8, § 2380a, at 831.

It should be noted that when this court found, by virtue of the filing of a personal injury lawsuit by the patient, a waiver of the physician-patient privilege in *Mathis v. Hilderbrand,*[7] we relied in major part on the reasoning put forth by Professor Wigmore, and there concluded,

> We are convinced that a rigid enforcement of the privilege under the facts of this case would serve no useful purpose and might result in injustice.[8]

The facts alleged in these petitions for review indicate injuries of the hip and leg to respondent Drobny, as well as injuries to the back in the nature of a cervical strain to petitioner Vervick. These injuries are demonstrative of the type of case where the need for medical history is essential to the defense so that it may evaluate properly its case. The medical aspects of cases such as these must be evaluated in light of prior existing medical conditions, as well as prior injuries to the affected portion of the patient's body. This is necessary so as to allow the fact finder not only to determine the extent of the damages which were in fact caused by the injury in question, but further to avoid the perpetration of fraud upon the fact finder and the court.

On this point *McCormick On Evidence* (2d ed. 1972), § 105 at 228, is in accord and states:

> More than a century of experience with the statutes (creating the privilege) had demonstrated that the privilege in the main operated not as a shield of privacy,

but as the protector of fraud. Consequently the abandonment of the privilege seems the best solution. (Footnote omitted)

Today we reaffirm the holding of the *Mathis* case [9] and find a waiver of the physician-patient privilege based upon the filing of a personal injury lawsuit.[10] Further, we hold that the filing of a personal injury action waives the physician-patient privilege as to all information concerning the health and medical history relevant to the matters which the plaintiff has put in issue.[11] The scope of the waiver extends to all matters pertinent to the plaintiff's claim, including but not limited to those matters the relevancy of which is based on a historical or causal connection.[12]

There is also present a dispute between the parties concerning the availability of informal discovery methods. Here petitioner Vervick challenges the defense's right to undertake discovery which is in the nature of private conferences with the treating physician in a matter being litigated, and contends that only formal discovery under the Rules of Civil Procedure is available to obtain such information. It is submitted that such discovery would carry with it the attendant formal requirements as set forth in the Rules of Civil Procedure.

We find no legal impediments in existence which limit informal methods of discovery, such as private conferences with the attending physicians, or the voluntary

---

7. 416 P.2d 8 (Alaska 1966).

8. *Id.* at page 10.

9. *Mathis v. Hilderbrand*, 416 P.2d 8 (Alaska 1966).

10. We do not limit our decision to any specific factual basis for such a suit.

11. 8 Wigmore, Evidence § 2389 (McNaughton rev. 1961) ; *Collins v. Blair*, 268 N.E.2d 95 (Ind.1971).

12. We wish to emphasize the view that issues of relevancy are to be interpreted in accord with a long line of discovery decisions of this court, starting with *Miller v. Harpster*, 392 P.2d 21 (Alaska 1964). Binding further as part of our definition of relevancy, within the context of discovery, is Civil Rule 26(b) (1), which provides in part:

> It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

exchange of medical information by the parties.[13] In our opinion such informal methods are to be encouraged, for they facilitate early evaluation and settlement of cases, with a resulting decrease in litigation costs, and represent further the wise application of judicial resources.

▊ This court has recently commented on the abuses of the formal discovery process in our courts and reminded the bench and bar that the intended purpose of our discovery process is to simplify trials, not complicate them. This court has additionally stressed that counsel should confer in good faith concerning discovery, and that information should be exchanged and requests complied with in a manner demonstrating candor and common sense.[14] We find these principles worth reiterating here.

▊ The orders entered below shall be interpreted in conformity with this opinion, and as such those orders are affirmed.[15]

RABINOWITZ, Justice (concurring).

I concur in the court's holdings as to the extent the physician-patient evidentiary privilege is waived as a result of the patient filing a claim for relief based on personal injuries. My disagreement with the court is centered on the dispositional aspect of the opinion for, in my view, Judge Carlson's order in *Vervick* should be reversed since it embodies none of the discovery

13. We feel this method is preferable to the more formal method utilized in *Garner v. Ford Motor Co.*, 61 F.R.D. 22 (D.C.Alaska 1973).

14. *Continental Insurance Companies v. Bayless and Roberts, Inc.*, 548 P.2d 398, 411 (Alaska 1975).

15. We note that in each of these cases the defendant filed a formal motion to waive the

limitations which the court has articulated in today's opinion. The controlling criteria which I find absent in Judge Carlson's order are formulated by the court in the following manner:

> Further, we hold that the filing of a personal injury action waives the physician-patient privilege as to all information concerning the health and medical history relevant to the matters which the plaintiff has put in issue. The scope of the waiver extends to all matters pertinent to the plaintiff's claim, including but not limited to those matters the relevancy of which is based on an historical or causal connection. (footnote omitted)

Given the absence of any hint of these criteria in Judge Carlson's order in *Vervick*, I conclude that the appropriate disposition is to reverse and remand with directions to vacate the order and to enter an order in conformity with the court's opinion in this matter.

On the other hand, I am of the view that Judge Lewis' order in the *Drobny* case should be modified and, as modified, affirmed. The *Drobny* waiver-discovery order appears to be in conformity with the waiver criteria of this court's opinion, if modified, to read as limiting discovery to those matters which have an "historical or causal connection" to the bodily injuries claimed of by Drobny which were received on or about January 29, 1976.

physician-patient privilege. Since the filing of the personal injury suit is the operative fact of waiver, it should not be necessary for the defendant to file a formal request in court. If defendant is required to obtain court-ordered waiver, then clearly costs and attorney fees are appropriate in all but the most unusual cases.